UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROGER JOHNSON,
    *Plaintiff*,

v.

OFFICER CONLEY *et al.*,
    *Defendants*.

No. 3:17-cv-00070 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Roger Johnson is currently incarcerated at Northern Correctional Institution. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments, and the Prison Rape Elimination Act. Based on my initial review pursuant to 28 U.S.C. § 1915A, I conclude that the complaint should proceed and be served on 15 of the 17 named defendants.

### BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's initial review. In August 2014, plaintiff worked in the textile program in the clothing factory at Osborn Correctional Institution. On August 4, 2014, defendant Officer Conley and defendant Supervisor Zawistowski forced an inmate to remove the privacy partitions that surrounded the toilets used by inmate workers in the clothing factory. When plaintiff complained, defendants Conley and Zawistowski made a joke and laughed at him. Doc. #1 at 6 (¶ 7).

A few minutes after the partitions were removed, defendant industries manager Ray Monroe entered the clothing factory. He explained that the bathroom partitions had been removed because someone had written negative statements on the partitions about an inmate named Santana. He indicated that the partitions would not be returned until the individual who wrote on

them came forward. He cursed at plaintiff and the other inmates, calling them "a bunch of fucking animals." *Id*. at 6 (¶ 9). He also threatened to terminate the inmates' jobs if they had a problem with the situation, stating "you guys don't have any rights to privacy, you take showers in your boxers with one another and some of you get butt-naked with one another." *Id*. at 6–7 (¶ 9). One of the inmates expressed concern about an individual named Mrs. Reyes-Greaves, who was then on vacation, and whether she would see the inmates use the toilet when she returned to work. Defendant Monroe responded that he would have another officer "black out the window and lock you in while you're using the bathroom." *Id*. at 7 (¶ 9).

That same day, plaintiff sent a written complaint to Commissioner Dzurenda, stating that he had been sexually harassed, threatened, and intimidated in the clothing factory. Commissioner Dzurenda never responded to the complaint. *Id*. at 7 (¶ 11).

For the next two days, plaintiff was forced to use the toilets in the clothing factory in full view of other inmates and staff. He claims that he was "prayed [sic] upon by several known dangerous violent sex offenders" while he was using the toilet on these days. *Id*. at 7 (¶ 9). Defendants Hussain and Beecher, both supervisors, were aware that the privacy partitions had been removed but took no action to correct or report the problem. *Id*. at 6–7 (¶¶ 8, 10).

About one month later, on September 7, 2014, plaintiff made a telephone call to the Prison Rape Elimination Act ("PREA") hotline and spoke with defendant David McNeil, the director of the PREA Investigations Unit for the State of Connecticut. Plaintiff recounted the partition incident and reported that he had been sexually harassed, threatened, and intimidated. Plaintiff believed that the phone conversation would be kept confidential, but immediately after the call, defendant McNeil contacted Osborn and informed defendant Lieutenant Correctional Officer Jamie Shepard that plaintiff had filed a PREA complaint. *Id*. at 7–8 (¶ 12).

Defendant Shepard called plaintiff to his office ten minutes after plaintiff's phone call with McNeil. When plaintiff arrived, defendants Shepard, Spruil, and Hebert surrounded plaintiff in a corner of the office. Shepard yelled and cursed at plaintiff, called him a "little bitch," and interrogated him about his conversation with the PREA unit. *Id*. at 8 (¶ 13). Plaintiff did not understand why defendants were questioning him about the PREA complaint, which he believed was confidential. Because he was afraid that defendants Shepard, Spruil, and Hebert might harm him if he refused to answer, plaintiff ultimately explained why he called the PREA unit. *Ibid*. The three defendants then threatened and intimidated plaintiff in an effort to force him to drop his PREA complaint. Plaintiff refused to withdraw the complaint. Defendants eventually permitted plaintiff to leave Shepard's office, but afterwards they collaborated to cover up his complaint by not filing a report or conducting any investigation into the complaint. *Id*. at 8–9 (¶¶ 14–16).

On October 25, 2014, plaintiff attempted to mail legal documents to the PREA unit. He gave the documents to defendant Mia Lawrence, a counselor, in a sealed envelope. Defendant Lawrence destroyed the documents to prevent them from being mailed. Plaintiff alleges that this was not the first time defendant Lawrence interfered with his mail: in 2013, Lawrence threatened to prevent plaintiff from mailing legal documents to court and was subsequently investigated by the district administrator. *Id*. at 9–10 (¶ 17).

On March 13, 2015, defendant Hussain removed plaintiff from his job in the clothing factory and transferred him to a job in the officer's clothing work shop, because plaintiff was a "trouble maker." *Id*. at 15 (¶ 39). Plaintiff alleges that Hussain transferred him in retaliation for plaintiff's earlier complaints of sexual harassment. *Ibid*.

In May 2015, plaintiff attempted to file a criminal complaint against the individuals involved in the sexual harassment and subsequent cover-up. Because he was concerned that staff

members were interfering with his outgoing mail, he submitted the complaint by faxing it to the Connecticut State Police. *Id*. at 13 (¶ 34).

On June 12, 2015, defendant Captain Luis Colon called plaintiff to his office. When plaintiff arrived in the office, he was confronted by Colon, as well as by defendants Correctional Officer Acus and Lieutenant Brown. Colon threatened plaintiff and forced him to stand in a corner of the office. Colon locked the door and refused to let plaintiff leave. When plaintiff told defendants that he felt threatened and afraid for his life, Colon laughed at plaintiff and said, "how about I put your ass in seg[regation], maybe you'll feel safe there." *Id*. at 13 (¶¶ 32–33). Defendant Acus then showed plaintiff a copy of the criminal complaint that plaintiff had faxed to the Connecticut State Police in May 2015. A Connecticut State Police officer had forwarded plaintiff's complaint to defendant Deputy Commissioner Monica Rinaldi, who in turn forwarded it to defendant Warden Maldonado. Warden Maldonado then emailed Colon and told him to "take care of" the matter. *Id*. at 13–14 (¶ 35).

During plaintiff's confinement in Colon's office, Acus, Colon, and Brown threatened plaintiff's life; pushed him into a wall, causing him to hit his head; and threatened to remove him from his job and transfer him to another part of the prison. *Id*. at 14 (¶ 35). Lieutenant Ruggeri then entered the office and asked what was going on. After hearing about plaintiff's criminal complaint, Lieutenant Ruggeri directed plaintiff to return to his housing unit and told him someone would contact him soon. *Id*. at 14–15 (¶ 36).

On June 12, 2015, defendant Deputy Commissioner Rinaldi wrote to plaintiff acknowledging receipt of the complaint he had faxed to the state police. The letter also noted that Rinaldi's office had contacted Osborn and found "no record of [plaintiff's] allegations being reported." Doc. #1-1 at 20; Doc. #1 at 15 (¶ 38). On July 7, 2015, defendant McNeil, the director

4

of the PREA Investigations Unit, wrote to plaintiff acknowledging having received a copy of his criminal complaint and his phone call on September 7, 2014. Doc. #1-1 at 21. McNeil's letter concluded that "the bathroom partitions being taken down, is not an incident of sexual abuse." *Ibid*. On July 22, 2015, defendant Rinaldi wrote to plaintiff again, informing him that his complaint did not meet the criteria to be classified as an incident of sexual abuse, that the complaint had been addressed at the facility level, and that the matter was now considered closed. *Id*. at 26; Doc. #1 at 15 (¶ 38).

Approximately a year and a half later, in February 2016, defendant counselor Lawrence told plaintiff that he had received a legal call. Plaintiff returned the legal call on February 11, 2016, and spoke to an advocate from the Connecticut Sexual Assault Crisis Service. While plaintiff was speaking to the advocate, Lawrence disrupted the call. She yelled at plaintiff, pulled a chair out from under him, flung another chair at plaintiff from across the room, and stood over his shoulder trying to listen to his phone conversation. Because he was so uncomfortable, plaintiff requested that his advocate come to the facility and meet with him in person. On March 3, 2016, the advocate from the Connecticut Sexual Assault Crisis Service came to visit plaintiff at Osborn. She told plaintiff that she had contacted the Commissioner of Correction to report Lawrence's conduct during the phone call. *Id*. at 10–11 (¶¶ 18–20).

On March 24, 2016, defendants Lawrence and Colon went to the officer's clothing workshop, where plaintiff was working. Lawrence was upset that she had been reported to the Commissioner. Lawrence began to yell at plaintiff and question him about his February 11 phone call. At the time of this confrontation, plaintiff was operating a high-powered embroidery machine. Lawrence pinned plaintiff up against the machine while it was in motion and spit in his face. Plaintiff repeatedly asked Lawrence to step back. Colon stood nearby watching but took no

5

action to intervene. Plaintiff subsequently obtained statements from three inmates who witnessed the incident. *Id*. at 11–12 (¶¶ 21–28); Doc. #1-1 at 33–37.

Later that day, plaintiff sent a request to the Commissioner of Correction to file a criminal complaint against Lawrence and Colon for assault. The Commissioner forwarded plaintiff's request to defendant Deputy Commissioner Rinaldi. Rinaldi refused to report the assault to the state police and instead forwarded the complaint to defendant Warden Maldonado. Maldonado refused to take any action against Colon or Lawrence. *Id*. at 12–13 (¶¶ 29–31).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### *Official Capacity Claims*

The complaint indicates that "all defendants are being sued in their individual and official capacities." Doc. #1 at 5. To the extent that plaintiff seeks monetary damages from defendants in their official capacities, these claims are barred by the Eleventh Amendment. *See Kentucky v.*

6

*Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### *First Amendment Retaliation*

To establish a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Filing grievances against correctional staff is protected activity. *Ibid*. Plaintiff alleges that defendants Shepard, Spruil, Hebert, Lawrence, Hussain, Colon, Acus, Brown, and Maldonado retaliated against him in various ways—*e.g.*, threatening him, physically harming him, transferring him to a less desirable job, interfering with his mail—in response to his complaints (grievances and PREA complaint) about sexual harassment and intimidation by correctional staff. Because plaintiff has alleged the basic requisites for a First Amendment retaliation claim, this claim may proceed against defendants Shepard, Spruil, Hebert, Lawrence, Hussain, Colon, Acus, Brown, and Maldonado in their individual capacities.

### *PREA*

Plaintiff asserts that he contacted defendant McNeil to file a PREA complaint, and that McNeil immediately told defendant Shepard about the complaint. Defendants Shepard, Spruil, and Herbert then threatened and intimidated the plaintiff in an effort to cause him to withdraw the complaint, conspired to cover up the complaint, and refused to investigate it or file a report regarding the claim. Director McNeill subsequently concluded that the incident described by plaintiff did not constitute sexual abuse.

To the extent that plaintiff is attempting to assert a claim for a violation of the PREA, 42 U.S.C. § 15601 *et seq.*, this claim fails because there is no private right of action for inmates to sue prison officials for non-compliance with the PREA. *Green v. Martin*, --- F. Supp. 3d ---, 2016 WL 7230500, at *10 (D. Conn. 2016). *See also Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (collecting cases and noting that "every court to address the issue" has held that the PREA does not allow a private cause of action). Any claim under the PREA is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Excessive Force*

The use of excessive force against a prisoner may constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Hudson v. MacMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (*per curiam*). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). The plaintiff alleges that defendants Colon, Acus, and Brown confined him in Colon's office, pushed him, and banged his head against the wall, and that defendant Lawrence pulled a chair out from under him, threw a chair at him, and spit in his face. These allegations are sufficient to state claims for excessive force against defendants Colon, Acus, Brown, and Lawrence.

### *Deliberate Indifference to Safety*

To state a claim for deliberate indifference to safety under the Eighth Amendment, a prisoner must show both that (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm," and (2) "defendant prison officials possessed sufficient culpable intent." *Hayes v. NY.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S.

825, 834 (1994)). A prison official acts with sufficient culpable intent "if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 847). Plaintiff contends that he was "prayed [sic] upon by several known dangerous violent sex offenders" while he was using the toilets after the partitions were removed. Specifically, he alleges that he was "gawked at and rubbed against by another inmate in the next stall over," and put in a position that made him vulnerable to rape. Doc. #1-1 at 5. He also asserts that he was sexually harassed, threatened, intimidated, and that he was later physically assaulted by various prison officials. And he alleges that despite observing or being informed of these circumstances, a number of prison officials took no action to protect him. I conclude that plaintiff has stated a claim for deliberate indifference to safety against all defendants except for defendants Semple and McNeil.

### *Right to Privacy*

Plaintiff alleges that defendants violated his constitutional substantive due process right to privacy under the Fourteenth Amendment by removing the bathroom partitions. The Second Circuit has recognized that "prisoners retain a right to bodily privacy, even if that right is limited by institutional and security concerns." *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005). "Cases in this Circuit and elsewhere addressing inmates' privacy rights suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that regular, close and frequent viewing is prohibited." *Urbano v. Murphy*, 2013 WL 6842939, at *3 (D. Conn. 2013).

Here, plaintiff alleges that defendants Conley, Zawistowski, Monroe, Beecher, Hussain, and Dzurenda participated in or were aware of the removal of the bathroom partitions and knew

9

that plaintiff was forced to use the toilet in front of other inmates and staff for two days. When plaintiff and others complained, defendant Monroe responded by telling them, "you guys don't have any rights to privacy." The complaint suggests that the removal of the partitions was not justified by security concerns; rather, the partitions were removed because someone wrote on them, and officials wanted to find out who was responsible. In light of these allegations, I find that plaintiff has stated a claim for a violation of his right to privacy.

### *Conspiracy*

Plaintiff alleges that defendants "conspired to cover up the circumstances" of his complaints of sexual harassment and intimidation. Doc. #1 at 1. This claim appears to be directed at defendants Shepard, Hebert, and Spruil, as plaintiff alleges that these defendants collaborated to cover up his PREA complaint by threatening him and by not filing a report or conducting an investigation. *Id*. at 8–9. In order to state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). To the extent that plaintiff is attempting to assert such a claim, the allegations in the complaint are too conclusory to suffice. *See id.* at 325 ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."). Plaintiff's conspiracy claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Commissioner Semple*

Plaintiff names Commissioner Semple as a defendant but does not allege any facts to indicate Commissioner Semple's personal involvement or responsibility for any constitutional harm that plaintiff has sustained. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant" and that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The claims against Commissioner Semple are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The claims against defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against Commissioner Semple and PREA Director McNeil, as well as plaintiff's PREA and conspiracy claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The First Amendment retaliation claims will proceed against defendants Shepard, Spruil, Hebert, Lawrence, Hussain, Colon, Acus, Brown, and Maldonado in their individual capacities. The Eighth Amendment deliberate indifference to safety claims will proceed against defendants Conley, Zawistowski, Monroe, Beecher, Dzurenda, Rinaldi, Maldonado, Colon, Hussain, Brown, Shepard, Spruil, Hebert, Acus, and Lawrence in their individual capacities. The Eighth Amendment excessive force claims will proceed against defendants Colon, Acus, Brown, and Lawrence in their individual capacities. The Fourteenth Amendment bodily privacy claims will proceed against defendants Conley, Zawistowski, Monroe, Beecher, Hussain, and Dzurenda in their individual capacities. The Court's ruling on

these issues is without prejudice to the right of any defendant to challenge the legal adequacy of plaintiff's pleadings.

(2) **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Commissioner Dzurenda, Deputy Commissioner Monica Rinaldi, Warden Maldonado, Captain Colon, Correctional Enterprises of Connecticut Supervisor Zawistowski, Correctional Enterprises of Connecticut Supervisor Hussain, Correctional Enterprises of Connecticut Supervisor Beecher, Industries Manager Ray Monroe, Lieutenant Brown, Lieutenant Jamie Shepard, Lieutenant Seneca Spruil, Lieutenant David Hebert, Correctional Officer Conley, Correctional Officer Acus, and Counselor Mia Lawrence. The Clerk shall mail a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service.

(3) Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(6) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or counsel for defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

It is so ordered.

Dated at New Haven this 14th day of April 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge